IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ANTHONY JONES, #82208, ) | Civil Action No. 3:10-238-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JON D. OZMINT, SCDC PRISON DIRECTOR; ) | **REPORT AND RECOMMENDATION** |
| WILLIE L. EAGLETON, WARDEN; ) | |
| A. GRAVES, GRIEVANCE CORD.; ) | |
| SGT. JOHNSON, CONTRABAND, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

Plaintiff, Anthony Jones, filed this action on February 10, 2010.[1] He appears to allege claims, pursuant to 42 U.S.C. § 1983 ("§ 1983"), for violations of his constitutional rights. At the time of the alleged incidents, Plaintiff was an inmate at the Evans Correctional Institution ("ECI") of the South Carolina Department of Corrections ("SCDC"). He is currently an inmate at the Perry Correctional Institution of the SCDC. Defendants are former SCDC Director Jon Ozmint ("Ozmint"), ECI Warden Willie Eagleton ("Eagleton"), former Contraband Sergeant Richard Johnson ("Johnson"), and Inmate Grievance Coordinator Argie Graves ("Graves"). On November 15, 2010, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on November 16, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on November 22, 2010, and Defendant filed a reply on November 24, 2010. Plaintiff filed an additional response (affidavit) on December 15, 2010, and Defendants filed an additional reply on December 30, 2010.

## **DISCUSSION**

Plaintiff claims that during a "shake down" of his cell in October 2009, his heart medications were taken from him. He appears to allege that Defendants were deliberately indifferent to his medical needs because they refused to return his medications for twenty-eight days. Plaintiff states that these medications were necessary to prevent him from having another heart attack (he had a heart attack in 2007 and had cardiac stents placed at that time). He also appears to allege that Defendants were deliberately indifferent to his needs by placing him on lock up for one day for requesting the return of his medications. Defendants contend that their motion for summary judgment should be granted because: (1) the complaint fails to state a claim against Defendants Ozmint, Johnson, and Graves upon which relief can be granted; (2) the matters asserted by Plaintiff do not fall within the scope of § 1983; (3) Defendant Ozmint cannot be held liable in any supervisory capacity; (4) Defendants are entitled to qualified immunity; (5) Defendants are entitled to Eleventh Amendment immunity; (6) Defendants in their official capacities are not "persons" under § 1983; (7) the complaint lacks an arguable basis in law and should be dismissed as frivolous under 28 U.S.C. §§

1915(e)(2)(B)(i) and 1915A(b)(1); and (8) the complaint should be dismissed pursuant to the Prison Litigation Reform Act.[2]

1.  Medical Claims

Plaintiff appears to allege that Defendants were deliberately indifferent to his serious medical needs because they confiscated his medications and refused to return them. Defendants deny that they confiscated Plaintiff's medications and assert that Plaintiff's medications were turned in by another inmate and then were taken to medical personnel at ECI. See Eagleton and Johnson Affs. They contend that Plaintiff fails to show that they were deliberately indifferent to any of his serious medical needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference

---

[2]In his responses to Defendants' motion for summary judgment, Plaintiff asserts that he has not received discovery materials from Defendants. Defendants contend that Plaintiff never served them with any discovery requests.

To the extent Plaintiff is attempting to compel discovery, his motions to compel are denied. He has not provided the needed supporting documentation. The Local Rules require that "[t]he relevant discovery requests and responses, if any, shall be filed as supporting documentation." Local Civil Rule 37.01(B) DSC. There is no indication that Plaintiff ever served his discovery requests on Defendants. Further, any such motions are untimely. Motions to compel must be filed within twenty-one days of the discovery response or, if no response is given, within twenty-one days after the response was due. See Local Civil Rule 37.01(A) DSC.

> is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as

> our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. He has not shown that he suffered any adverse effect from not receiving his medications for approximately one month. Amy Smith ("Smith"), the Health Care Authority at ECI, states that based on her review of Plaintiff's records, there is no indication that Plaintiff had any adverse affects from not having these medications and that there did not appear to be a change in his medical condition. Smith Aff. Review of Plaintiff's medical records (attached to Defendants' motion for summary judgment) fails to reveal that Plaintiff suffered any serious medical needs resulting from the deprivation. The records indicate that stress testing and an echocardiogram performed by a private cardiologist in 2010 indicated no changes from earlier testing and that it was recommended that Plaintiff's medications be continued unchanged.

Further, Plaintiff fails to show that the named Defendants were deliberately indifferent to his medical needs. Smith states that if medications are confiscated from an inmate they are taken to the medical department to determine if they should be returned. She states that the unit where Plaintiff

was housed had sick call four times a week and Plaintiff could have signed up for sick call if he did not have his medications. Plaintiff has not shown that he signed up for sick call in an effort to obtain his medications. There is no indication that the named Defendants, rather than medical personnel, were responsible for dispensing any of the medications in question.

      2.      Disciplinary Charge/Lockdown

Plaintiff claims that Defendants were deliberately indifferent in locking him up for one day as a result of the alleged incident. Plaintiff appears to allege that disciplinary charges were improperly brought against him and/or that he was improperly found guilty of these charges. Eagleton and Johnson deny that medications were taken from Plaintiff by correctional officer(s). They state Plaintiff alleged that the Agency Search Team and Officer McRae took his medications, Plaintiff's cell mate said that Plaintiff's locker was broken into, the lock on Plaintiff's locker was intact, Plaintiff then stated he had left his locker key in his coat pocket in his cell while he was at work and that officers must have used that key to enter his locker, another inmate turned in the medications in question that afternoon such that the medications could not have been seized by correctional officers, Plaintiff and his cellmate were charged with Lying to an Employee or Knowingly Making False Statement, Plaintiff was found guilty of this charge in a disciplinary hearing on November 4, 2009, and this conviction has not been overturned. Eagleton and Johnson Affs. Defendants contend that Plaintiff's claims concerning the disciplinary charge and subsequent conviction are barred by Heck v. Humphrey.

To the extent that Plaintiff's allegations concern his disciplinary proceeding and the outcome of the proceeding, his claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994)[3] and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck). Plaintiff has not shown he successfully attacked his disciplinary hearing conviction. Plaintiff cannot maintain a § 1983 action, whether for restoration of good time credits, monetary damages, or injunctive relief related to the hearing, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding. Here, to the extent that the awarding of damages to Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing, his claim is barred under Heck and Balisok.

Further, to the extent that Plaintiff is challenging his placement in lockdown, he fails to show a constitutional violation. Generally, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that a change in

---

[3] The Supreme Court, in Heck v. Humphrey, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the analysis set forth in Sandin, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996) [Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).

    3.    Grievances

Plaintiff appears to allege that his grievances were improperly handled by Defendant Graves. Graves states that she handled several grievances filed by Plaintiff and handled all of them in accordance with SCDC policy. She states that one of Plaintiff's grievances was returned unprocessed because he failed to attempt an appropriate informal resolution and another was returned because it involved issues related to a disciplinary offense. See Graves Aff. Defendants argue that

8

the grievances were handled properly, but even if they were not, Plaintiff fails to state a cause of action under § 1983 as he had no right to a grievance process.

To the extent that Plaintiff alleges a claim concerning the grievance system or the processing of his grievances, his claims fail. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994).

### 4. Supervisory Liability

Defendant Ozmint contends that he cannot be held liable as a matter of law in any supervisory capacity for any acts of others over which he had no control. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant Ozmint was personally responsible for any of the incidents or acted in any way other than a supervisory role. He claims that he informed Ozmint about his lack of medication and Ozmint did nothing about it. Plaintiff, however, appears to admit that

Ozmint had no knowledge of the matter until November 10, 2009, when Ozmint's office received Plaintiff's letter. See Plaintiff's Aff. (Doc. 36) , Ex. 1 (Letter dated November 4, 2009). At that point, Plaintiff's medication had already been restarted by Dr. Beinor. Plaintiff's medical records indicate that Dr. Beinor ordered that Plaintiff's medication be restarted on November 4, 2009. See Plaintiff's Medical Records (Attachment to Defendants' Motion for Summary Judgment). Further, Plaintiff has not shown that Defendant Ozmint was deliberately indifferent to, or tacitly authorized, any of the actions or inactions of the SCDC employees. Thus, Plaintiff fails to show that Defendant Ozmint is liable on a theory of respondeat superior or supervisory liability.

5.    Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

11

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 30) be **granted**.

                                                 Joseph R. McCrorey
                                                 United States Magistrate Judge

March 17, 2011
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).